UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PHILIP MORRIS USA INC.,

                        Plaintiff,                          **REPORT &**
                                                                         **RECOMMENDATION**

    - against -                                                        08 CV 0069 (ARR)(CLP)

C.H. RHODES, INC., et. al.,

                        Defendants.
------------------------------------------------------------X

On January 7, 2008, plaintiff Philip Morris USA Inc. ("Philip Morris") commenced this trademark infringement action against defendants C.H. Rhodes, Inc. ("Rhodes"), Hong Ling Zhang ("Zhang"), and John Does 1-10, raising various claims stemming from defendants' alleged importation of counterfeit Marlboro® cigarettes. Among the claims included in plaintiff's Complaint are claims of: (i) trademark infringement, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; (ii) false designation of origin and trademark and trade dress infringement, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) the unlawful importation of goods bearing infringing trademarks in violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124; (iv) the unlawful importation of goods bearing registered United States trademarks in violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a); (v) state common law claims of unfair competition and trademark infringement; (vi) violations of New York General Business Law Section 249-l; and (vii) trademark infringement in violation of New York General Business Law Sections 260-k *et seq.*

Despite proper service, defendant Rhodes[1] failed to answer or otherwise respond to the Complaint, and plaintiff filed an application for entry of default. The Clerk of Court entered a default against defendant on September 22, 2008, and the action was then referred to the undersigned to conduct an inquest and prepare a Report and Recommendation concerning the amount of damages to be awarded. An inquest hearing was held on November 13, 2009, but defendant failed to appear.

Accordingly, for the reasons set forth below, this Court respectfully recommends that plaintiff be awarded a total of $2,000,000 in statutory damages, plus $350 in costs, and that the request for injunctive relief also be granted.

## FACTUAL BACKGROUND

Plaintiff Philip Morris is the registered owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Registration Number | Registration Date | Trademark |
|---|---|---|
| 68,502 | April 14, 1908 | MARLBORO® |
| 938,510 | July 25, 1972 | MARLBORO Red Label® |

(Pildis Aff.[2] ¶ 2). Philip Morris has invested substantial time, effort and money in advertising

---

[1]Following discovery, defendant Zhang was dismissed as a defendant by stipulation entered on September 21, 2009.

[2]Citations to "Pildis Aff." refer to the Declaration of Sara K. Pildis in Support of Plaintiff Philip Morris USA Inc.'s Motion for Default Judgment and Order Granting Injunctive Relief Against Defendant C.H. Rhodes, Inc., filed on November 21, 2008.

and promoting the Marlboro® marks.³ (Id. ¶ 3). In accordance with Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a) and Section 42 of the Lanham Act, 15 U.S.C. § 1124, Philip Morris filed and recorded a copy of the certificate of registration of the Marlboro® trademark with the Secretary of the Treasury/U.S. Bureau of Customs and Border Protection ("Customs"). (Pl.'s Exs. A, B). Once filed with Customs, the Marlboro® trademark was recorded under the Recordation Number TMK-97-00877. (Id. ¶ 4; Pl.'s Ex. C).⁴

On or about December 23, 2005, Customs provided Philip Morris with a Notice of Seizure of Infringing Merchandise (No. 2006-4601-000139-01) ("Notice of Seizure"). This Notice of Seizure stated that on October 19, 2005, Customs seized 12,500 cartons of counterfeit "Marlboro®" cigarettes and 7,200 cartons of counterfeit "Benson & Hedges" cigarettes.⁵ These goods had been imported from China, by Shanghai Jianpu Import & Export Co., Ltd. (See Pl.'s Exh. D., filed Sept.19, 2008). The ultimate consignee for the shipment was listed as C.H. Rhodes Inc., 97 Powerhouse Road, Suite #302, Roslyn Heights, N.Y. 11577, the defendant in this matter.

Philip Morris subsequently obtained samples of the cigarettes that had been seized by

---

³The Marlboro Red Label® trademark, also referred to in the Complaint as the "Marlboro Roof Design Label," appears to be the registered Marlboro® design of a pentagonal figure with a horizontal top and two vertical sides with upwardly and inwardly sloping diagonal lines – like the roof of a barn – that appears on the outside packaging of Marlboro® cigarettes. (See Pl.'s Complaint, filed January 7, 2008 ("Compl.") ¶ 4; Pl.'s Ex. B, filed November 21, 2008.)

⁴It does not appear that Philip Morris ever registered the "Marlboro Red Label"® trademark with Customs.

⁵Plaintiff has not provided any proof of ownership for the "Benson & Hedges" trademark. As a result, the seizure of those cartons has not been considered in determining liability or damages.

3

Customs and confirmed that the cigarettes were counterfeit. (Pildis Aff. ¶ 6). These cigarettes utilized both the Marlboro® name and Marlboro® packaging. (Compl. ¶¶ 5, 14).

Plaintiff commenced this action on January 7, 2008 and served defendant Rhodes with copies of the Summons and Complaint through the New York Secretary of State. (Aff. of Service, Docket No. 6). Although Rhodes continues to be listed as an active corporation existing under the laws of the state of New York (Pildis Aff. ¶ 10), Rhodes never answered or appeared in this litigation despite proper service.

## DISCUSSION

### A. Jurisdiction

As an initial matter, this Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338, which grants jurisdiction to federal courts for actions involving violations of trademarks. Phillip [sic] Morris USA Inc. v. Marlboro Express, No. 03 CV 1161, 2005 WL 2076921, at *2 (E.D.N.Y. Aug. 26, 2005).

### B. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case. See id.; Fed. R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by

these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default"). After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). If the amount of damages must be ascertained in order for default judgment to be entered, the court may conduct a hearing. See Fed. R. Civ. P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95.

In determining whether a default judgment should enter, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance the interest in expediting cases with the court's responsibility to "afford[ ] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored," and any doubts should be resolved in favor of the defaulting party. Id. Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply because the defendants are in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice").

The court possesses significant discretion, and may consider a number of factors in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved. See Hirsch v. Innovation Int'l,

5

Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). The greater the amount of money involved, the less justification there may be for entering the default judgment. See id. Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10A Fed. Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

When a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages. See id.; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

### C. Claims I and II

In its first two claims, plaintiff alleges violations of the Lanham Act, which prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Section 43(a) of the Lanham Act prohibits "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any

false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which. . . . is likely to cause confusion." 15 U.S.C. § 1125(a). Liability is established under both Sections 32 and 43(a) of the Lanham Act if a plaintiff can demonstrate "(1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion." Phillip Morris USA Inc. v. Marlboro Express, 2005 WL 2076921, at *4 (citing Arrow Fastener v. Stanley Works, 59 F.3d 384, 390 (2d Cir. 1995)).

In this case, plaintiff has alleged sufficient facts in the Complaint to establish both elements. Plaintiff has provided certificates of trademark registration of the Marlboro® name and cigarette box design establishing that Philip Morris has a valid trademark entitled to protection under the Lanham Act. (Pl.'s Ex.'s A-C). Plaintiff also has sufficiently alleged the necessary element of likelihood of confusion, as demonstrated by the letter from Customs indicating that it had intercepted a shipment containing 12,500 cartons of cigarettes, containing a counterfeit Marlboro® brand. (Pl.'s Ex. D). "Counterfeits by their very nature cause confusion." Gucci America, Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003). Given that defendant has failed to appear or contest the allegations in the Complaint, the plaintiff's claims are deemed to be admitted for purposes of liability. Accordingly, the Court finds that defendant Rhodes is liable for violations of both Sections 32 and 43(a) of the Lanham Act.

D. <u>Claims III and IV</u>

Plaintiff also alleges in its Complaint that defendant unlawfully imported goods bearing

infringing trademarks into the United States, in violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124. Section 42 provides that "no article of imported merchandise . . . which shall copy or simulate a trademark registered in accordance with the provisions of this chapter . . . shall be admitted entry at any customhouse of the United States." Id. In order to establish a violation of Section 42, "a trademark owner need only prove that the defendant imported goods bearing copies of its federally registered marks." Philip Morris USA Inc. v. Liu, 489 F. Supp. 2d 1119, 1122 (C.D. Cal. 2007).

In this case, plaintiff alleges, and it is uncontested, that defendant shipped counterfeit cartons of Marlboro® cigarettes into the United States. Therefore, based on the undisputed allegations in the Complaint, defendant is liable under Section 42 of the Lanham Act for the illegal importation of these counterfeit cigarettes.

Plaintiff's fourth claim also alleges the unlawful importation of goods bearing registered United States trademarks in violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a). This section of the Tariff Act provides that "it shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise. . . .bears a trademark owned by. . . .a corporation or association created. . . .within, the United States, and registered in the Patent and Trademark Office. . . ." Id. Again, the facts alleged in the Complaint are sufficient to establish a violation of this statute.

### E. Plaintiff's New York State Claims

Plaintiff's Complaint also alleges that defendant's conduct was in violation of (1) New York's common law prohibitions on unfair competition; (2) New York's common laws of

trademark infringement; (3) New York General Business Law § 349, prohibiting deceptive acts and practices; and (4) New York General Business Law § 360-k *et seq.*, prohibiting trademark infringement. Since plaintiff seeks statutory damages of $2,000,000 under the federal law violations, the Court does not address plaintiff's state law claims at this time, since damages provided under federal law will be more than sufficient to compensate plaintiff for its injury.

F. Damages

Under 15 U.S.C. § 1117(c), plaintiff seeks statutory damages in the amount of $2,000,0000. The Lanham Act provides that a plaintiff may elect statutory damages in lieu of actual damages when the case involves the distribution of goods with a counterfeit mark. Id. Statutory damages shall be:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).[6] In determining whether the defendant acted willfully, the court must determine "whether the defendant had knowledge that [its] conduct represented infringement or perhaps recklessly disregarded the possibility." Kepner Tregoe, Inc. v. Vroom, 186 F.3d 283, 299 (2d Cir. 1999). The factors to be considered when determining statutory damages include:

---

[6]The violations here occurred in 2005, at which time the statute only allowed up to $1 million per counterfeit mark if use of the mark was found to be willful. The statute was not amended until October 13, 2008 to raise the statutory maximum to $2 million. Therefore, the Court applies the law's earlier version. See Landgraf v. USI Film Prods., 511 U.S. 244, 283-86 (1994).

9

"1) defendant's profits from infringement, 2) the defendant's wilfulness [sic], 3) the size of defendant's counterfeiting operation, 4) defendant's efforts to mislead and conceal, 5) the deterrent effect on others besides the defendant, and 6) the potential for discouraging the defendant." Phillip Morris USA Inc. v. Marlboro Express, 2005 WL 2076921, at *6 (itemized numbers added).

In this case, the amount of counterfeit Marlboro® cartons seized, 12,500, alone is sufficient to demonstrate willfulness. See Philip Morris USA Inc. v. ABC Chinese Food, Inc., No. 08 CV 4226, 2009 WL 4067997, at *1 (E.D.N.Y. Nov. 18, 2009). As a consequence, plaintiff argues that it is entitled to statutory damages of up to $1,000,000 per counterfeit mark per type of goods. In this case, plaintiff alleges two different trademarks were infringed, the trademark Marlboro® and the trademark, Marlboro Red Label®, since the seized cartons of cigarettes contained both the Marlboro® name and the distinctive Marlboro red roof label design®, which are registered separately. (Compl. ¶¶ 5, 14). At $1,000,000 per trademark infringed, plaintiff argues it is entitled to a total award of $2,000,000. (Pl.'s Mem. at 9-11).

Looking at the relevant factors as identified by the court in Phillip Morris USA Inc. v. Marlboro Express, it is clear that the defendant did not receive any profits from this shipment of counterfeit cigarettes because they were seized before they could be sold. However, had the defendant been able to sell the cigarettes, the profits would have been significant. While the prices of cartons vary widely, according to one website, the average price of a Marlboro® carton purchased online is about $30.00.[7] At that price, the value of 12,500 cartons would be $375,000.

---

[7] See htttp://www.cigarettepricesearch.com/cigarette-cheapest-prices/marlboro.htm

With respect to the second and third factors outlined in the Marlboro Express case, this Court has already concluded the defendant's conduct willful, and it appears that the defendant is sufficiently sophisticated and large enough to import 12,500 cartons of Marlboro® cigarettes. Similarly, defendant has gone to great efforts to mislead the public into believing their cigarettes were produced by Philip Morris, when it fact they were not.

Considering the fifth factor, there is a great need for deterrence here to discourage large scale counterfeiting. In addition, since the product at issue here is cigarettes, which are already highly regulated and taxed, there is always a danger that cigarettes produced and distributed illegally could be more harmful to the health of the public than cigarettes produced under the auspices of the law. Even though legitimately produced cigarettes pose a significant health risk, the public is nonetheless entitled to purchase cigarettes containing known ingredients, and the Marlboro® trademark is one way of ensuring the public that they are purchasing a known product. There is no way of ensuring the quality of counterfeit cigarettes, which could be made from anything.[8] For these reasons, plaintiff argues that there is an incentive to discourage defendant and others from producing counterfeit cigarettes.

Courts in this district have previously awarded $1,000,000 in statutory damages per violation of the Philip Morris trademark. See Philip Morris USA Inc. v. ABC Chinese Food, Inc., No. 08 CV 4226, 2009 WL 4067997, at *1 (awarding $2 million); Phillip Morris USA Inc. v. Marlboro Express, 2005 WL 2076921, at *6 (awarding $4 million for four infringed trademarks). In ABC Chinese Food, where the defendant imported 34,272 cartons of counterfeit

---

[8]In this case, it is unknown what was in the counterfeit cigarettes seized by Customs and they have since been destroyed.

cigarettes, the court held that the maximum award of statutory damages was warranted based on the "quantity alone [which] establishes willfulness," and the "defendants' attempt to hide their behavior and evade service of process [which] underscores the willful element of their actions." 2009 WL 4067997, at *1. Similarly, in Marlboro Express, defendant produced at least 200,000 cartons of counterfeit cigarettes. Phillip Morris USA Inc. v. Marlboro Express, 2005 WL 2076921, at *2. Noting that "[d]istrict courts have wide discretion in awarding statutory damages," the court found that the evidence of defendant's willfulness, the quantity of cigarettes involved, the size of the potential profit, and the need for a substantial deterrent justified the maximum award available under the statute. Id. at *6.

However, in this case a significantly smaller amount of cartons was seized--12,500. Therefore a penalty of $1 million per mark seems both excessive and duplicative. Having considered the relevant factors, this Court respectfully recommends that plaintiff's application be granted and that plaintiff be awarded $500,000 per infringed trademark, for a total of $1,000,000 in statutory damages.

### G. Permanent Injunction

In addition to damages, plaintiff also seeks a permanent injunction restraining and enjoining defendant and its employees from importing counterfeit Marlboro® cigarettes or using the Marlboro® trademarks. (Compl. at 14). Injunctive relief is appropriate where plaintiff has demonstrated that no amount of monetary damages would prevent the harm to plaintiff's brand caused by such a large shipment of infringing products. See In re Vuitton et Fils S.A., 606 F.2d

1, 4 (2d Cir. 1979); Phillip Morris USA Inc. v. Marlboro Express, No. 03 CV 1161, 2005 WL 2076921, at *7. Section 34(a) of the Lanham Act allows courts to grant injunctions "according to the principles of equity and upon such terms as the Court may deem reasonable. . . ." 15 U.S.C. §1116(a). To obtain a permanent injunction, a plaintiff must show: "(1) actual success on the merits and (2) irreparable harm." Phillip Morris USA Inc. v. Marlboro Express, 2005 WL 2076921, at *5. Plaintiff has already prevailed on the merits of the case. Furthermore, "proof of likelihood of confusion establishes both likelihood of success on the merits and irreparable harm." Brennan's Inc. Brennan's Rest., 360 F.3d 137, 142 (2d Cir. 1997).

Therefore, based on a finding that the likelihood of confusion is great, this Court respectfully recommends that plaintiff's request for a permanent injunction be granted, permanently enjoining defendant Rhodes from purchasing, importing, distributing, selling or offering for sale, counterfeit Marlboro® cigarettes or assisting, aiding or abetting any other person or entity in doing so; or using the Marlboro® marks or trademarks confusingly similar therewith or the Marlboro® trade dress or trade dress confusingly similar therewith. (See Pl.'s Compl. at 14).

H.  Costs and Attorney's Fees

Finally, Philip Morris also seeks reimbursement of $350.00 in costs, which represents the filing fee in this case. (Pildis Aff. ¶ 12). An award of costs is authorized pursuant to 15 U.S.C. § 1117(a).

Accordingly, the Court respectfully recommends that plaintiff's request for costs be

granted in the amount of $350.

## CONCLUSION

In summary, this Court respectfully recommends that plaintiff be awarded $1,000,350.00 in damages, as well as a permanent injunction against defendant from using the counterfeit Marlboro® trademarks.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(d), 72; Small v. Secretary of Health & Human Servs., 892 F. 2d 14, 15 (2d Cir. 1989).

The clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**
Dated: Brooklyn, New York
March 26, 2010

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York